IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**CHRISTOPHER LEE HICKS, SR.,**

                Plaintiff,

vs.

**ACCURATE BACKGROUND, LLC,**

                Defendant.

CASE NO.:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Christopher Lee Hicks, Sr. ("Plaintiff" or "Mr. Hicks"), by and through his attorneys, brings the following Complaint against Accurate Background, LLC ("Defendant" or "Accurate Background") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that falsely portrayed Plaintiff as a Registered Sex Offender.

## INTRODUCTION

1. This is an individual action for damages, costs and attorneys' fees brought against Accurate Background pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

1

3. Defendant falsely reported to Plaintiff's new employer that he is a Registered Sex Offender. This was grossly inaccurate and untrue. Plaintiff is not a Registered Sex Offender and has never been charged with a crime in his life. Plaintiff's new employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included sex offender registration information that does not belong to him.

4. Defendant's inaccurate report could have been easily remedied had Defendant consulted widely available public records pertaining to the sex offender registration information reported prior to issuing Plaintiff's report to his employer in the first place. Had Defendant even performed a cursory review of such public records, it would have discovered that the actual registered sex offender is a different race than Plaintiff, resided in a different part of the country than Plaintiff and does not share any common address history, and is currently incarcerated in the State of Mississippi.

5. Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

6. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal information.

7. Defendant's inaccurate reporting cost Plaintiff a job, causing him to suffer a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of his ten-year relationship with his girlfriend; emotional strain in his relationship with his minor children; loss

of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

8. As a result of Defendant's conduct, Plaintiff brings claims for Defendant's failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA.

## THE PARTIES

9. Plaintiff Christopher Lee Hicks, Sr. is an individual person residing in the City of Dayton, County of Montgomery, State of Ohio.

10. Defendant Accurate Background, LLC is a California corporation doing business throughout the United States, including in the State of Ohio and in this District, and has a principal place of business located at 7515 Irvine Center Drive, Irvine, California 92618.

11. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

12. Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court

3

of competent jurisdiction.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

15. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or for credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

16. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

17. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to ensure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

18. Consumer reports that contain factually incorrect information belonging to an entirely different consumer are neither maximally accurate nor fair to the consumers who are subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

19. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

20. The FCRA provides a number of protections for job applicants who are subjected

to background checks.

21. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Accurate Background, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

22. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## FACTS

### Plaintiff Applies for a Job with Manumit Enterprises-DSP

23. In or about November 2020, Plaintiff applied for full-time employment with Manumit Enterprises-DSP ("Manumit"), a general contractor of Amazon.com, Inc. ("Amazon"), to work as a Delivery Driver at the Warehouse Distribution Center in Kettering, Ohio.

24. Upon applying to Manumit, Plaintiff downloaded the Amazon Flex application ("app") on his phone to track the status of his job application. As part of the employee enrollment process, Plaintiff filled out his driver's license information, personal information, and photo identification in the app. Plaintiff was then notified via the app that his job application was being processed and that Manumit would be requesting a background check. Manumit also extended a conditional offer of employment to Plaintiff, via the app, subject to the successful completion of a background check. Plaintiff's training was set to begin after his background check cleared.

25. Plaintiff was particularly excited about the job opportunity at Manumit because he was interested in the job responsibilities associated with delivery drivers and package distributors in the warehouse. The position came with competitive pay at $16.00 per hour and benefits, including medical, dental, and vision. It also included 401k contributions, a profit-sharing

incentive, paid vacation, opportunity for advancement, and flexible shifts of 8-10 hours per day.

### Defendant Publishes an Inaccurate Background Check to Plaintiff's Employer

26. Amazon contracted with Accurate Background to conduct background checks, including criminal background checks, on its prospective employees.

27. On or about December 7, 2020, Amazon ordered a criminal background check on Plaintiff from Accurate Background.

28. On or about December 17, 2020, in accordance with its standard procedures, Accurate Background completed Plaintiff's employment background check ("employment report").

29. Accurate Background's employment report on Plaintiff contained six pages of information, including a grossly inaccurate and stigmatizing sex offender registration record.

30. The employment report listed the following sex offender registration information, which appeared in Plaintiff's employment report as follows:

```
SEARCH ID:        192223444
SEARCH TYPE:      NATIONAL SEX OFFENDER DATABASE SEARCH
STATUS/RESULT:    RECORD FOUND
STATE/COUNTY:     NA / NONE
COMPLETION DATE:  2020-12-09
```

31. This sex offender registration information **does not** belong to Plaintiff.

32. Plaintiff has never been charged with or convicted of a criminal offense that requires him to register as a sex offender and Plaintiff is not on the National Sex Offender Database or Registry.

33. A cursory review of the sex offender registration information as reported in the employment report, and as reported in the widely available underlying public court records, confirms that the records belong to an unrelated male, Christopher Lee Hicks ("Convicted Sex

Offender Christopher Hicks"), who is currently incarcerated at the Central Mississippi Correctional Facility in Rankin County, Mississippi. Had Accurate Background actually consulted or obtained the widely available underlying public court records, it would have seen obvious discrepancies between Convicted Sex Offender Christopher Hicks and Plaintiff. The discrepancies that should have caused Accurate Background to realize Plaintiff is not the same person as Convicted Sex Offender Christopher Hicks include the following:

a) Plaintiff's legal name is "Christopher Lee Hicks, *Sr.*," and the sex offender registration information belongs to a "Christopher Lee Hicks," which is in the widely available public records from the Mississippi Sex Offender Registry;

b) Plaintiff is a *White male*, but the underlying public records from the Mississippi Sex Offender Registry (available for free on the internet) confirms that Convicted Sex Offender Christopher Hicks is a *Black male*;

c) Plaintiff's address history as indicated on the face of the employment report indicates that he has only ever lived in *Dayton, Ohio*, and the widely available underlying public records confirm that Convicted Sex Offender Christopher Hicks lived in *Yazoo City, Mississippi*, registered as a sex offender in the State of Mississippi, and is currently incarcerated in the State of Mississippi;

d) Plaintiff's Social Security number, which was provided to Defendant by Manumit/Amazon and is included on the first page of the employment report, is different than the Social Security number belonging to Convicted Sex Offender Christopher Hicks; and

e) Plaintiff has never been charged with or convicted of a crime requiring him to register as a sex offender in the State of Mississippi, or in any other state in the

7

United States. In fact, Plaintiff has full legal custody of his two teenage sons.

34. The sole reason the inaccurate sex offender registration information was reported as belonging to Plaintiff was that Accurate Background failed to use reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's employment report. Had Accurate Background used reasonable procedures, it would have discovered that the inaccurate, stigmatizing sex offender registration information belongs to an unrelated individual who is of a different race than Plaintiff, lived in a different part of the country than Plaintiff, is currently incarcerated, and has no suffix in his legal name.

### Manumit Denies Plaintiff's Job Application as a Direct Result of Defendant's Inaccurate Employment Report

35. On or before December 29, 2020, Plaintiff received a notification in the Amazon Flex app that he failed his background check and, therefore, his employment application had been denied.

36. Shocked and confused by the results of his background check, Plaintiff immediately contacted Amazon to get the name of the company that prepared his background check report. Plaintiff then immediately contacted Accurate Background to request a copy of his employment report.

37. On December 29, 2020, Accurate Background sent email correspondence to Plaintiff containing a link to his employment report.

### Plaintiff Disputes the Misinformation in Defendant's Employment Report and Manumit Rejects Plaintiff's Employment Application

38. On or about December 30, 2020, Plaintiff sent email correspondence to Accurate Background disputing the inaccurate sex offender registration information contained in his employment report.

8

39. Prior to the completion of Accurate Background's reinvestigation of Plaintiff's dispute, Plaintiff received an email from Manumit/Amazon on or about January 4, 2021, which consisted of an Adverse Action Notice ("AAN"). The AAN stated, among other things, that the decision to deny Plaintiff's job application was based in whole or in part on the information contained in Accurate Background's consumer report.

40. On January 8, 2021, approximately nine days after disputing the inaccurate report, Plaintiff received email correspondence from Accurate Background confirming that it had reinvestigated his dispute and removed the sex offender registration information from the employment report. An updated copy of the employment report confirmed the status of the "National Sex Offender Database Search" section of Plaintiff's corrected employment report indicated: "NO RECORDS FOUND."

41. By the time Accurate Background completed its reinvestigation and corrected Plaintiff's employment report, Manumit was no longer interested in considering Plaintiff for employment and never got back in contact with him.

42. Accurate Background's false report cost Plaintiff a promising, well-paying job opportunity with Manumit. Plaintiff was set to earn $16.00 per hour with benefits, including medical, dental, and vision. Plaintiff's job offer also included 401k contributions, a profit-sharing incentive, paid vacation, opportunity for advancement, and flexible shifts of 8-10 hours per day.

43. Due to Accurate Background's failings, Plaintiff has been unemployed for approximately five months, from November 2020 to present.

44. Plaintiff intends to apply for jobs in the future and given the ubiquity of pre-employment background checks and the size of Accurate Background, there is a real and immediate threat that Plaintiff will suffer the same injury with respect to future applications.

45. In creating and furnishing Plaintiff's employment report, Accurate Background failed to follow reasonable procedures to assure that the report was as accurate as maximally possible. In particular, Accurate Background allowed a match in spite of the existence of information which clearly established that Convicted Sex Offender Christopher Hicks was not Plaintiff, such as the fact that Convicted Sex Offender Christopher Hicks does not share Plaintiff's race, address history, or suffix. This exculpatory public record information was widely available to Accurate Background prior to publishing Plaintiff's employment report to Manumit/Amazon, but Accurate Background failed to perform even a cursory review of such information.

46. As a result of Accurate Background's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Accurate Background's erroneous employment report; damage to his reputation; loss of his ten-year relationship with his girlfriend; emotional strain in his relationship with his minor children; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

47. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

48. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

10

2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

49. The criminal background check industry takes in revenues of $3 billion a year and is growing.[2]

50. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

51. Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

52. Defendant is well aware of the FCRA and has been sued dozens of times for reporting inaccurate or outdated information.

53. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

54. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

---

[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

11

55. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for reports that are accurate.

56. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a sex offender registry record that belonged to an entirely different individual.

57. Defendant is further aware of the FCRA requirements as it is a member of the National Association of Professional Background Screeners ("NAPBS"). NAPBS puts on conferences multiple times a year where presenters discuss compliance with federal and state consumer reporting laws.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

58. Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1-57, above.

59. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

60. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

61. At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

62. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's employment report and the files it published and maintained.

63. As a result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered a range of actual damages, including without limitation, loss of employment opportunities, wages,

and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Defendant's erroneous employment report; damage to his reputation; loss of his ten-year relationship with his girlfriend; emotional strain in his relationship with his minor children; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

64. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

65. In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

66. Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a) Determining that Defendant negligently and/or willfully violated the FCRA;

b) Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

67. Plaintiff demands a trial by jury.

Dated: August 16, 2021

                        **O'TOOLE McLAUGHLIN DOOLEY & PECORA CO LPA**

                        /s/ Matthew A. Dooley
                        Matthew A. Dooley (0081482)
                        5455 Detroit Road
                        Sheffield Village, Ohio 44054
                        Telephone:    440-930-4001
                        Facsimile:     440-934-7208
                        Email:          mdooley@omdplaw.com

                        **BERGER MONTAGUE PC**
                        Hans W. Lodge, MN Bar No. 397012
                        43 SE Main Street, Suite 505
                        Minneapolis, MN 55414
                        Telephone: (612) 607-7794
                        Fax: (612) 584-4470
                        hlodge@bm.net
                        *\*Pro Hac Vice Forthcoming*

                        *ATTORNEYS FOR PLAINTIFF*